IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TINA M. GALLEGOS,

        Plaintiff,

vs.                                          CIVIL NO. 99-387 LFG/DJS

JOHN L. RUST CO., a Delaware
corporation, fka Rust Tractor Company,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING IN PART AND GRANTING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant John L. Rust Co.'s Motion for Summary Judgment [Doc. 20]; and on Plaintiff Tina M. Gallegos' ("Gallegos") Cross-Motion for Summary Judgment as to Count I [Doc. 24]. In accord with the district's motion practice rule, the motions, responses and replies were simultaneously filed. The Court authorized Gallegos to file a surreply, and that was done on December 23, 1999 [Doc. 28]. Oral argument is not necessary. These two motions may be resolved based on the parties' submissions.

## **Background**

This case arises out of Gallegos' contentions that John L. Rust Co. ("Rust") violated the Family and Medical Leave Act of 1993, 29 U.S.C.A. § 2601 *et seq.* ("FMLA") when, following Gallegos' maternity leave, Rust did not return her to the position she previously held, or even to any comparable position.

Rust contends that while Gallegos was on maternity leave, it upgraded its manual entry data system to a computerized bar code system. Gallegos was one of two Senior Service Clerks, and Rust contends that manual entry of data was one of Gallegos' principal responsibilities. With the adoption of the computerized bar coding system, two clerks were no longer necessary and the work could be completed by one full-time and one part-time employee, rather than two full-time employees. Rust further states that it opted to retain the second senior clerk, Joyce Hunt ("Hunt"), instead of Gallegos after it "considered the two employees' relative job performance and work ethics, and determined that Hunt should hold the full-time position." Thus, Rust offers a business justification, non-discriminatory explanation for not returning Gallegos to the same or substantially similar position. Rust argues that Gallegos was offered a severance package and a part-time position. Finally, Rust contends that Gallegos' position would have been eliminated whether or not she was on FMLA leave.

Gallegos' second claim concerns breach of contract. She contends that Rust's personnel policies promise protections to her, including employment retention after maternity leave, and that this protection as an employee is greater than those required by the FMLA. On the other hand, Rust contends that no express promises were made and argues that there is no contract.

Gallegos' last claim, concerns her contention that Rust breached the implied covenant of good faith and fair dealing. Rust counters that New Mexico does not recognize this cause of action.

### Summary Judgment Standards

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The

moving party has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). Once the moving party meets its burden, the opposing party must come forward with specific facts supported by evidence demonstrating the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986).

Summary judgment may not properly be used to weigh the evidence or to resolve disputes in facts. Indeed, when the court finds a factual dispute of a material nature, it is improper to grant summary judgment. Rather, the factual disputes should be resolved by a jury. Finally, the court is obligated to construe the factual record and the reasonable inferences in the light most favorable to the party opposing the motion. Perry v. Woodward, 188 F.3d 1220, 1225 (10th Cir. 1999).

With these standards in mind, the Court considers the parties' arguments.

## **Violation of FMLA**

Rust contends that it did not violate FMLA by failing to return Gallegos to the position she had prior to going on leave. Rather, Rust takes a "business justification" approach, and states that due to the conversion from a manual method of entering data on its computers to a bar code approach, the need for two clerks was eliminated, and the position could thereafter be handled by one full-time clerk and a part-time clerk. Yet, Gallegos' evidence demonstrates that she was a long-time employee, that the adoption of the bar code did not require elimination of her position, and that, in any event, she had significantly more experience than Hunt, the employee who was retained. (Herman deposition, p. 42).

3

Prior to going on maternity leave, Gallegos complained to Alan Herman ("Herman") that she was not getting a "fair shake" from Ken Randall ("Randall"), and that Randall was demonstrating favoritism toward Hunt. (Randall deposition, p. 33). Gallegos testified that she was concerned that Hunt, who had far less experience than Gallegos, was selected as the lead senior clerk. (Gallegos' deposition, pp. 52 and 53). Because Gallegos felt that selection was unfair, she approached Herman and then was directed to Randall. She testified that Randall "took it very offensively." (Gallegos' deposition, p. 53). Gallegos presented evidence that Randall's decisions may be ethnically motivated appeared confirmed when Hunt told her that a position was going to become available for a used equipment foreman. The position went to a non-Hispanic with less than six months' experience, even though Hispanic employees in the shop had significantly more experience. Hunt related that this would occur "because Mr. Randall didn't like them talking their language in the shop or in the office." (Gallegos' deposition, p. 54). Gallegos testified that she confronted Herman and Randall and expressed her concerns that "there's a form of discrimination." (Gallegos' deposition, p. 55). These conversations all occurred prior to Gallegos' leaving on maternity leave.

Rust now infers that Gallegos was not a good employee. Yet, there is an absence of written verification or personnel file justification to corroborate that claim. At no time prior to, or even during the course of, her maternity did any Rust employee advise Gallegos that the ongoing computerization program would have the effect of eliminating her position. Indeed, some two weeks prior to her return date, Gallegos met with David Gard ("Gard"), Rust's Human Resources Manager, and when she told him that she was getting ready to come back to work, he told her "Great. We're looking forward to having you back." (Gallegos' deposition, p. 64). A mere two weeks later, Gallegos was advised by Herman for the first time that her position had been eliminated. (Gallegos'

4

deposition, p. 66). It is undisputed that Gallegos was not returned to her former position, nor was she offered any substantially similar or comparable position. Gard's statement raises doubts about Rust's motivation in eliminating Gallegos' job, and whether the claimed lack of need for two full-time employees is pretextual.

Contrary to Rust's representations that the computerization eliminated the need for two full-time positions, Gallegos notes that between Hunt's overtime and the temporary positions, employees were working in excess of two full-time positions. Indeed, at present, Hunt and Micky Silva, the part-time employee who replaced Gallegos, now both work full time. (Herman deposition, pp. 6-7). Thus, the alleged "savings" may be illusory, and the "business justification" may be pretextual. This evidence, when linked to testimony concerning other motivation to eliminate Gallegos' position, raises a material issue of fact relating to Gallegos' termination. The Court is careful to note, however, that when "business justification" is relied upon, an employer does not "need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a non-discriminatory fashion." Birge v. Apfel, 141 F.3d 1184, (Table, text in Westlaw), No. 97-2158, 1998 WL 165118, at *3 (10th Cir., Apr. 2, 1998)(citing EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992). An employer is not required, by law, to have a good reason for its decisions. Flasher, at 1312; it is simply prohibited from having an illegal one. When an employee returns from FMLA, she is entitled to her prior position or a similar one. (Gard deposition, p. 11). Indeed, in some twenty years' experience as a human resource personnel manager, Gard cannot recall a single instance where an individual on maternity leave came back to find that her job no longer existed. (Gard deposition, p. 12).

It is undisputed that Gallegos did not receive her same position nor a similar one, and the only position that was offered to her was a part-time position without any benefits. The Court determines that there are material issues of fact in dispute and, accordingly, Rust's motion and Gallegos' motion for summary judgment on this claim will be denied.

### Breach of Implied Covenant of Good Faith and Fair Dealing

Gallegos contends that Rust's conduct toward her violated Rust's duty of good faith and fair dealing. This covenant is generally recognized as an integral part of every contract. In Watson Truck & Supply Co. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990), the court stated, "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Nonetheless, the New Mexico Supreme Court carved out an exception for at-will employment contracts. New Mexico declines to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in at-will employment contracts. Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994).

While Gallegos' argument may have merit, the Court is still required to ascertain and apply New Mexico law on substantive issues. Adams-Arapahoe School Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 870 (10th Cir. 1992). Bourgeous appears to be a blanket rejection of this cause of action. The federal court is bound to apply New Mexico's substantive law. Thus, with the New Mexico Supreme Court declining to recognize this cause of action as valid, Rust's motion for summary judgment on this count should be granted.

### Breach of Contract

It is undisputed that Rust maintained a personnel manual containing written policies related to maternity leave. A personnel manual can give rise to an implied contract if it controls the

6

employer-employee relationship, and an employee could reasonably expect her employer to conform to the procedures it outlines. Newberry v. Allied Stores, Inc., 108 N.M. 424, 773 P.2d 1231 (1989). New Mexico courts have also held that not all personnel manuals give rise to implied contracts. Lukoski v. Sandia Indian Management Co., 106 N.M. 664, 666, 748 P.2d 507, 509 (1988). Rust's personnel policies provide protections even greater than those afforded by the FMLA. Indeed, Rust's Personnel Policies and Procedures Manual states:

> The company provides eligible employees with the opportunity for extended absences from active work status without jeopardizing those company benefits that are dependent upon years of continuous employment. Leaves granted for military, maternity, family, and medical purposes carry the assurance of reinstatement; leaves granted for other purposes carry the reasonable assurance of reinstatement whenever possible.

The questions here are whether Gallegos could reasonably expect Rust to conform to the procedures it outlined in its personnel policies, and whether those policies were intended to control the relationship between Rust and its employees. When a personnel policy is so specific and encourages reliance thereon, the employee may not treat its policy as illusory. Lukoski, 106 N.M. at 666-67, 748 P.2d at 509-10; see also Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 918 P.2d 7 (1996).

It is undisputed that Gallegos sought maternity leave in accord with Rust's Personnel Policies and Procedures Manual. She was approved for leave and she states that she had the reasonable expectation of reinstatement because the Personnel Policies and Procedures Manual specifically assures an employee of reinstatement when leave has been granted for military, maternity, family or medical purposes. Rust disputes this and contends no promises were made. Thus, there is a material

7

dispute on this issue. The Court is precluded from weighing evidence at this stage, but finding that there is a factual dispute, the motion should be denied and the matter should proceed to trial.

                                                                                                              _____
                                                                                                              Lorenzo F. Garcia
                                                                                                              United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Matthew E. Ortiz, Esq.

ATTORNEY FOR DEFENDANT:
David A. Rammelkamp, Esq.